1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **EASTERN DISTRICT OF CALIFORNIA**

10

11    JACOB RAY SOLORIO,                    | Case No.  1:19-cv-00716-DAD-SAB (PC)
      Formerly known as Brianna Nycole      |
12    Solorio                               | FINDINGS AND RECOMMENDATION
                                            | RECOMMENDING DISMISSAL OF ACTION
13                         Plaintiff,       | FOR FAILURE TO STATE A COGNIZABLE
                                            | CLAIM FOR RELIEF, FAILURE TO
14          v.                              | PROSECUTE, AND FAILURE TO COMPLY
                                            | WITH A COURT ORDER
15    LISA LARRANAGA, et al.                |
                                            | [ECF Nos. 18, 19]
16                         Defendants.      |

17

18          Plaintiff Jacob Ray Solorio[1] is a pretrial detainee proceeding *pro se* in this civil rights

19    action pursuant to 42 U.S.C. § 1983.  This matter was referred to a United States Magistrate

20    Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.  Plaintiff's complaint in this

21    action was filed on May 22, 1019.  (ECF No. 1.)

22    ///

23    ///

24

25    _____

      [1] Plaintiff filed this action under the name "Brianna Nycole Solorio."  (ECF No. 1.)  According to the originally filed
      complaint, on October 2, 2018, Plaintiff changed their name and gender from "Tyrone Smith" and male to "Brianna
26    Nycole Solorio" and female.  (Id. at 18.)  On September 6, 2019, Plaintiff filed a notice of an additional name and
      gender change indicating that due to the previous name and gender change, Plaintiff was not allowed to participate in
27    education programs, and therefore completed another name and gender change.  (Id. at 1.)  The corresponding state
      court filing indicates that on August 19, 2019, Plaintiff changed their name and gender from "Brianna Nycole Solorio"
      and female, to "Jacob Ray Solorio" and male.  (Id. at 2.)

28

                                            1

1      On November 27, 2019, the Court screened Plaintiff's complaint and granted Plaintiff
2  leave to file a first amended complaint.

3      Plaintiff filed a first amended complaint on January 6, 2020.  On January 23, 2020, the
4  Court screened Plaintiff's first amended complaint and granted Plaintiff leave to file a second
5  amended complaint.  (ECF No. 13.)

6      On March 20, 2020, Plaintiff filed a second amended complaint.  (ECF No. 17.)

7      On April 9, 2020, the Court screened Plaintiff's second amended complaint and found that
8  Plaintiff failed to state a cognizable claim for relief.  (ECF No. 18.)  Plaintiff was granted thirty
9  days in which to file a second amended complaint, but Plaintiff failed to do so.  (Id.)
10  Accordingly, on May 20, 2020, the Court issued an order to show cause why the action should
11  not be dismissed for failure to state a cognizable claim for relief, failure to prosecute, and failure
12  to comply with a  court order.  (ECF No. 19.)  Plaintiff failed to respond to the Court's May 20,
13  2020 order.  Therefore, dismissal is warranted.

## I.

## SCREENING REQUIREMENT

16      The Court is required to screen complaints brought by prisoners seeking relief against a
17  governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The
18  Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally
19  "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that
20  "seek[] monetary relief against a defendant who is immune from such relief."  28 U.S.C. §
21  1915(e)(2)(B).

22      A complaint must contain "a short and plain statement of the claim showing that the
23  pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not
24  required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere
25  conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell
26  Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Moreover, Plaintiff must demonstrate
27  that each defendant personally participated in the deprivation of Plaintiff's rights.  Jones v.
28  Williams, 297 F.3d 930, 934 (9th Cir. 2002).

1      Prisoners proceeding *pro se* in civil rights actions are entitled to have their pleadings

2 liberally construed and to have any doubt resolved in their favor.  Wilhelm v. Rotman, 680 F.3d

3 1113, 1121 (9th Cir. 2012) (citations omitted).  To survive screening, Plaintiff's claims must be

4 facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer

5 that each named defendant is liable for the misconduct alleged.  Iqbal, 556 U.S. at 678-79; Moss

6 v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The "sheer possibility that a defendant

7 has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's

8 liability" falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678; Moss, 572 F.3d

9 at 969.

10 **II.**

11 **COMPLAINT ALLEGATIONS**

12      Plaintiff names the following defendants: (1) Lisa Larranaga, identified as a Wellpath

13 Program Manager ("Larranaga"); (2) Duncan Denise, identified as a captain ("Duncan")[2]; (3)

14 Lieutenant Kirk ("Kirk"); (4) Monique Brown, identified as a program director ("Brown"); (5) Jeff

15 Dirske, identified as a sheriff-coroner ("Dirske"); and (6) the Stanislaus County Sheriff's

16 Department (the "Sheriff's Department").[3]  (SAC 1-3.)

17     **A.**    **Plaintiff's First Cause of Action**

18      Plaintiff's first cause of action is described as "access to treatment concerning

19 medical/psychological condition[,] cruel and unus[ua]l punishment[, and] due process deprivation

20 of mental health treatments."[4]  (SAC 3.)  Since 2015, Plaintiff has been a pretrial detainee

21 incarcerated at the Stanislaus County Jail.  (SAC 4.)  Plaintiff is a transgender inmate and suffers

22 from gender dysphoria.  (Id.)  For over four years, Plaintiff alleges they have diligently requested

23 psychological treatments by a competent mental health provider that specializes, treats, and is

24

25 [2]  The Court will refer to this Defendant by the apparent first name "Duncan" as that is the name Plaintiff repeatedly utilizes in the pleading.

26 [3]  While Plaintiff does not name the Sheriffs Department as a separate defendant in the list of defendants, the Sheriff's

27 Department is named in the caption page.  (SAC 1-3.)

28 [4]  When quoting the Plaintiff's complaint herein, the Court may alter the capitalization of words without identifying specific alterations.

3

experienced with transsexual persons.  (Id.)  Plaintiff generally alleges that Defendant Larranaga failed to secure psychological treatment, Defendants Duncan, Kirk, and Brown, denied treatment, and Dirske has supervisor liability.  (SAC 3.)  Plaintiff's complaint is separated into sections for each individual Defendant in relation to the first cause of action, and the Court now turns to these individual sections.

### 1.   First Cause of Action - Defendant Dirske

Plaintiff alleges the following:

[Defendant] Dirske is responsible in his individual capacity for his own culpable inaction in the training, supervision, or control of his subordinates, for his ac[]quiescence in the constitutional deprivation or for conduct that showed a reckless or callous indifference to the rights of others, hence, of transgender inmates.
Currently the sheriff[']s facility has and has not had a policy affording Transgender Inmates the same rights afforded to het[e]rosexual inmates in regards to psychological mental health treatments for gender dysphoria making the mental health system defic[i]ent and unconstitutional, [and] implements or executes a policy statement, ordinance, regulation or dec[i]sion offic[i]ally.  Currently the[re] is no policy or regulation to treat trans inmates.
Since 2015 I have been in custody of at the Stanislaus County Jail.
Since 2015 I have requested to be seen by a comp[et]ent mental health provider who specializes in transgender care.
Over the course of more than four years my request[s] have been delayed and or denied.
Between 2015 to 2017 I[']ve sent numerous request[s] to B.H.R.S. informing them that I suffer from severe gender dysphoria and to no avail have I received help.
In 2017, I grievanced Mrs. Larranaga and was denied access to a trained psychologist and if I wanted psychological treatments I would then have to be seen by Well-Path and B.H.R.S. providers, which are contracted out by the Stanislaus County Sheriff[']s [Department].
Said providers are not trained or experienced in the treatments of trans inmates nor specialize in such care.
On numerous accounts I have informed the Defendants that because of gender dysphoria I felt a danger to my person.  As a result of years of denial I was injured because of the culpable actions of the subordinates of [the] Sheriff.  [The] Sheriff was given notice of all my request incidents [and] was given notice of systematic problems in the county jail under his supervision.

(SAC 6-8.)

### 2.   First Cause of Action - Defendant Larranaga

Plaintiff puts forth the following allegations as to Defendant Larranaga:

Lisa Larranaga is responsible in her individual capacity for her own inaction.
In 2017 I grievanced [the] Program Manager to be seen by a trans-specialist and was denied stating that if I wanted to be seen I would have to been by non[-]specializing providers.
I appealed that dec[i]sion and L.T. Kirk, Facility Commander, denied my request

stating that it was a medical issue and that Mrs. Larranaga will handle all medical matters and that he has no authority over medical dec[i]sions.

Between 2017 and 4-2-19 I[']ve sent dil[']igently numerous request[s] regarding my safety to my person and that mental/psychiatric assessments and extensive therap[]y focused on gender dysphoria was needed.

I have still yet to be seen or provided with trained professionals.

On 4-2-19 I grievanced Program Manager Lisa Larranaga about the same issues that have been addressed in the past and was denied again, stating I need to fill out a Blue form for mental health providers.

On 8-8-18, 12-01-19, 1-18-2018[,] 3-27-19[,] 4-1-19[,] 5-3-2019[,] 4-3-2019[,] 8-6-18[,] 2-26-19[,] and dates and times up to the present can be [subpoenaed] by the Courts.

On 2-7-19[,] I informed Lisa Larranaga concerns regarding my safety here[,] the endange[r]ment to my self and to the safety and security of this facility because of the deprivation of being denied adequate mental health services.  Again I was directed to submit a blue medical request form.

In March of 2019, I had an episode of self[-]attempted cast[]ration and had to be taken to a local hospital by ambulance for sutures for severe lacerations[,] causing significant amounts of pain due to such inaction of all Defend[a]nts.

Over the course I have advised Lisa Larranaga and her superiors that my condition causes significant amounts of distress, impairment in social, and other important areas of functioning.

In a face to face meeting with Mrs. Larranaga and her superior Monique Brown, mental health director[,] stated that I have been seen over forty times by mental health providers.  I then confirmed her allegation which was true in part.  I have seen but for reasons not relating to gender dysphoria.

Upon me revealing such I was then told by both Defend[a]nts, that I would have to see their providers and that they are not trained in that area of expertise but can Google search for information that I may need and or request.

Since 2015 to 2017 I[']ve submitted [illegible] to B.H.R.S. providers stressing the urgency of mental health treatments even though they are not trained or specialize in that particular area, I felt it necessary to see if maybe they were comp[et]ent enough to show some type of guid[a]nce and or advise for my condition.  My attempts have been unsuccess[s]ful in securing treatment even from mental health providers contracted out by this facility.

From 2017 to present 2020 I was moved to a different area of the jail where all request[s] are done by a [kiosk] machine computer.

I do not have the dates but the Courts can seize and subp[oe]na for such records.

I do know that over the course of three years from 2017 to 2020 I[']ve submitted over thirty give or take request[s] and have yet to be seen by mental health professionals in regards to my severe gender dysphoria[,] never once have I been seen.

The reason[] for my not having the exact dates are because I have since moved and no longer have access to the kios[k].  I[']m sure the Courts can subpoena during discovery.

(SAC 9-12.)

### 3. First Cause of Action - Defendant Brown

Plaintiff states that Defendant Brown is responsible in her individual capacity for her own inaction, that she is the Director of Mental Health, makes policy for the mental health program, is a superior to Mrs. Larranaga, and subordinate to Defendants Dirske, Kirk, and Duncan.  (SAC 13.)

Specifically, Plaintiff alleges Brown is liable for the following:

> The policy for not having a [competent] mental health program for trans inmates
> resulted in me having severe mental anguish, d[u]ress, pain and suffering[,] and an
> attempted episode of [castration] acting pursuant to County policies that deprived
> me of services afforded to het[e]rosexual inmates.
> Mrs. Brown has acted with reckless [dis]regard after over the course of more than
> four years has been given notice of endangerment to my person, the daily suffering
> and significant amounts of [duress] inaction and failure by one charged with a duty
> to exercise due care diligence to prevent an injury after the discovery of peril or
> under circumstances where he or she is charged with a knowledge of such peril,
> and being consci[ou]s of the inevitable or probable results of such failure.
> Mrs. Brown and all defend[a]nts participated in or directed the violations and failed
> to act to prevent them.

(SAC 13-14.)

4.     First Cause of Action - Defendant Kirk

Plaintiff states Defendant Kirk is responsible in his official or individual capacity

and specifically alleges:

> In 2017[,] I grievanced L.T. Kirk for access to mental health treatments provided
> by experienced train[]ed psychologist[s] that specialize in the treatments of
> transgender inmates.
> On or about August 2017, I received a written response as well as a face to face
> with L.T. Kirk granting my request and saying he will work dil[]igently with Mrs.
> Larranaga and Monique Brown to set a treatment plan in place for G.I.D.
> counseling treatment by specializing prof[]essionals.
> Indicating he will work personally with providers contracted out by the Sheriff[']s
> Dept[,] [and] personally participated in the inaction [and] delay of almost four
> years, ste[m]ming from 2017.
> I have given this facility plenty [of] time to set a treatment plan in place [and] the
> delay has been intentional and reckless.  Deliberate indifference delayed and
> intentionally interfered with medical treatments.
> After the long delay I grievanced L.T. Kirk again and was told at the second level
> that he has no authority over [] medical issues and that my grievance dated 4/15/19
> are the same issues that have been addressed in the past, after his own admission
> that he would be working personally and dil[]igently with medical providers.
> Such recklessness and delay has led to further injury [and] I have still yet to be seen
> concerning, G.I.D. counseling.

(SAC 15-16.)

5.     First Cause of Action - Defendant Duncan

Plaintiff alleges the following:

> Captain Duncan received my griev[a]nce at the final administrative level on 4-7-
> 19.
> Denying my request, stating my appeal has been addressed adequately by L.T. Kirk
> and program manager Larranaga.
> Indicating that I have a complicated medical case and Wellpath administration is
> assessing an appropriate course of care.

> How long does one must suffer for the intentional disregard ignored and delayed treatment of his subordinates.
> Captain Duncan[,] a[n] Adult Detention Division Commander acted with licentious act[,] conscious failure by one charged with a duty to exercise due care and diligence to prevent an injury after the discovery of the peril or under circumstances where he is charged with a knowledge of such peril and being conscious of the inevitable or probable results of such failure.

(SAC 17.)

### B.   Plaintiff's Second Cause of Action

Plaintiff's second cause of action is described as cruel and unusual punishment and deliberate indifference.  (SAC 4.)  Plaintiff alleges:

> Failure to secure treatment, inaction of treatment.  Sheriff's Department failed to act to protect inmates under their care, with the knowledge that I was in danger because of culpable acts of his subordinates and despite his ability to take actions that would have protected such inmates.  After four years of delayed treatment I suffered from a self[-]inflicted wound from attempted castr[]ation."  All Defendants personally acted, with indifference.

(Id.)

Although Plaintiff puts forth this as a separate cause of action, given the allegations in Plaintiff's first cause of action are essentially the same or overlap with the second cause of action, the Court will address Plaintiff's first and second causes of action together.

### C.   Requested Relief

Plaintiff requests injunctive relief that provides psychological treatment by an experienced, trained specialist in transgender mental health.  (SAC 5.)  Plaintiff also seeks six and a half million dollars ($6,500,000.00) for reconstructive surgery, emotional distress, and pain and suffering. (SAC 5.)

### III.

### DISCUSSION

### A.   Federal Rule of Civil Procedure 8

Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  "Such a statement must

///

///

7

1    simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it

2    rests."  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (citation and internal quotation

3    marks omitted).

4           Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a

5    cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678

6    (citation omitted).  This is because, while factual allegations are accepted as true, legal conclusions

7    are not.  Id.; see also Twombly, 550 U.S. at 556-57; Moss, 572 F.3d at 969.  Therefore, Plaintiff

8    must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

9    on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the

10   court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

11   Iqbal, 556 U.S. at 678  (citations and internal quotation marks omitted).

12          Here, the majority of Plaintiff's allegations are conclusory and generalized statements

13   covering purported years of interactions between Plaintiff and Defendants, but such allegations are

14   unsupported by sufficient specific facts to support the conclusory allegations.  As currently pled,

15   Plaintiff's complaint does not contain enough factual content to permit the Court to draw the

16   reasonable inference that any Defendant is liable for the misconduct alleged.  Iqbal, 556 U.S. at

17   678.  Where Plaintiff does provide specific facts, such facts are vague, confusing, or contradictory

18   in the way they are expressed, as explained in greater detail in the following sections.  Therefore,

19   Plaintiff's complaint does not comply with the requirements of Rule 8(a)(2).

20          **B.      Linkage Requirement under Section 1983 and Supervisory Liability**

21          Additionally, because Plaintiff's allegations are vague and conclusory, Plaintiff's complaint

22   similarly  fails  to  establish  an  adequate  link  between  the  actions  of  Defendants  and  any

23   constitutional injury.

24          Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other

25   federal rights by persons acting under color of state law.  Nurre v. Whitehead, 580 F.3d 1087, 1092

26   (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v.

27   Williams, 297 F.3d 930, 934 (9th Cir. 2002).  The statute provides:

28

> Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Crowley v. Nevada ex rel. Nevada Sec'y of State, 678 F.3d 730, 734 (9th Cir. 2012) (citing Graham v. Connor, 490 U.S. 386, 393-94 (1989)) (internal quotation marks omitted). The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). Thus, to state a claim, Plaintiff must allege facts demonstrating the existence of a link, or causal connection, between each Defendant's actions or omissions and a violation of his federal rights. Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

To the extent that Plaintiff seeks to hold any Defendants liable based *solely* because of a supervisory role, Plaintiff may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of *respondeat superior*. Iqbal, 556 U.S. at 676–77; Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1020–21 (9th Cir.2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Supervisors may be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205–06 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009). Supervisory liability may also exist without any personal participation if the official promulgated and/or implemented "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional

violation." <u>Redman v. Cnty. of San Diego</u>, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by <u>Farmer v. Brennan</u>, 511 U.S. 825 (1970).

While the Court appreciates that Plaintiff separated certain allegations for each named Defendants in an organized fashion, the individual sections still contain references to unspecified Defendants or individuals, attributes conduct to all Defendants generally in such sections, or attributes conduct applicable to multiple Defendants to the individual Defendants.   Other allegations are vague, confusing, or contradictory, particularly in consideration of Plaintiff's previously filed complaints.  Therefore, Plaintiff's factual details do not sufficiently demonstrate a link between each Defendant's actions and a violation of a constitutional right.  The Court now turns to Plaintiff's allegations directed at the individually named Defendants.

1.    <u>Defendant Jeff Dirske</u>

Plaintiff's primary allegation against Defendant Dirske is that he is responsible in his individual capacity for "his own culpable inaction in the training, supervision, or control of his subordinates, for his ac[]quiescence in the constitutional deprivation or for conduct that showed a reckless or callous indifference to the rights of others, hence, of transgender inmates."  (SAC 7-6-7.)  Plaintiff then generally states the Sheriff's Department "has and has not had a policy affording" transgender inmates the same rights afforded to heterosexual inmates for psychological treatments for gender dysphoria, and describes seeking treatment from a transgender specialist from 2015 to 2017.  (SAC 7.)

Initially, as discussed below, Plaintiff has failed to allege a cognizable claim of deliberate indifference to the needs of mental health care in violation of the Fourteenth Amendment. Plaintiff's factual allegations do not establish a causal link to Defendant Dirske for any constitutional violation.   Further, the Court takes judicial notice of the representation of the Stanislaus County Sheriff's Department that Jeff Dirkse was sworn into the office as Sheriff-Coroner on January 7, 2019.  <u>See</u> Stanislaus County Sheriff's Department website, available at https://www.scsdonline.com/admin/office-of-the-sheriff-1/sheriff-dirkse.html, retrieved on April 1, 2020.[5]  Thus, the vast majority of Plaintiff's allegations directed at the department and all

---

[5] The Court may take judicial notice of such fact.  <u>Diamond v. United States</u>, No. ED CV 14-01922-VBF, 2015 WL

Defendants generally, occurred prior to Defendant Dirske being sworn in as Sheriff.

To the extent that Plaintiff is attempting to allege that Defendant Dirske promulgated and/or implemented a constitutionally deficient policy, Plaintiff has not pled facts identifying the specific unconstitutional policy promulgated and/or implemented by Defendant Dirske and/or facts describing how the specific policy caused the violation of Plaintiff's constitutional rights. Therefore, Plaintiff has failed to state a cognizable supervisory liability claim against Defendant Dirske.  As discussed further below, documents attached to the originally filed complaint and Plaintiff's factual statements demonstrate that while Plaintiff alleges there is *no* policy affording transgender psychological treatment for gender dysphoria, Plaintiff has apparently been assigned a transgender specialist, Plaintiff's application for gender reassignment surgery is under review by a Gender Dysphoria Review Committee, and Plaintiff has not specifically demonstrated the existence of any policy treating heterosexual inmates differently from transgender inmates in a discriminatory manner.

2.    Defendant Larranaga

It is unclear from Plaintiff's current allegations, in relation to the originally filed complaint, as to whether Plaintiff claims Defendant Larranaga has denied all access to psychological treatment for gender dysphoria and has falsified records concerning such denial, or Plaintiff only alleges the assigned professionals treating Plaintiff do not have enough expertise in the particular area of gender dysphoria.

Plaintiff states they "grievanced Mrs. Larranaga and was denied access to a trained psychologist and if [Plaintiff] wanted psychological treatments [Plaintiff] would then have to be seen by Well-Path and B.H.R.S. providers, which are contracted out by" the Sheriff's Department, but "[s]aid providers are not trained or experienced in the treatments of trans inmates nor specialize in such care."  (SAC 8.)  Plaintiff also specifically states: "In a face to face meeting Mrs. Larranaga

---

13037525, at *3 (C.D. Cal. Feb. 20, 2015) ("The Court takes judicial notice of the representation on the website of the Riverside County Sheriff's Department that 'Sniff has served as the 13th Sheriff of Riverside County since October 2, 2007.' "); Tarkington v. Cty. of Los Angeles, No. CV 18-07636-CJC-JC, 2019 WL 1002516, at *6 (C.D. Cal. Jan. 16, 2019) (taking judicial notice of date sheriff joined department based on "official biography" on the sheriff's department website); Paralyzed Veterans of Am. v. McPherson, No. C064670SBA, 2008 WL 4183981, at *5 (N.D. Cal. Sept. 9, 2008) (noting courts routinely take judicial notice of factual information from the world wide web, particularly where the information is on government agency websites).

and her superior Monique Brown . . . [they] stated that I have been seen over forty times by mental health providers," which Plaintiff confirmed "was true in part," but had been "seen for reasons not relating to gender dysphoria." (SAC 11.)  Plaintiff states that between 2015 and 2017, Plaintiff did submit requests "to B.H.R.S. providers stressing the urgency of mental health treatments even though they are not trained or specialize in that particular area, I felt it necessary to see if maybe they were comp[et]ent enough to show some type of guid[a]nce and or advise for my condition. My attempts have been unsuccess[s]ful in securing treatment even from mental health providers contracted out by this facility." (SAC 11.)  Plaintiff alleges in the most recent complaint that "I do know that over the course of three years from 2017 to 2020[,] I[']ve submitted over thirty give or take request[s] and have yet to be seen by mental health professionals in regards to my severe gender dysphoria[,] never once have I been seen."  (SAC 12.)

However, in Plaintiff's originally filed complaint, Plaintiff states: "Let it be noted that in regards to a plan of care for hormone treatment only[,] my treatments have been addressed appropriate[e]ly." (ECF No. 1 at 8.)  In a letter dated February 7, 2019, a Wellpath administrator wrote to Plaintiff stating: "We have been more than willing to work with you regarding your treatment plan and have followed the recommendations of Dr. Webster, your transgender specialist." (ECF No. 1 at 10.)  Subsequent letters appear to describe a course of treatment and refer to a Gender Dysphoria Review Committee, a transgender/transition specialist assigned to Plaintiff named Dr. Weber, visits with an outside hormone specialist to assist with hormone therapy, and future plans for "a series of mental/psychiatric assessments and extensive therapy focused on gender dysphoria and SRS."  (See February 26, 2019 Letter, ECF No. 1 at 14; March 21, 2019 Letter, ECF No. 1 at 12; April 1, 2019 Letter, ECF No. 1 at 15; April 8, 2019 Letter, ECF No. 1 at 16; May 3, 2019 Letter, ECF No. 1 at 17.)

In the originally filed complaint, Plaintiff makes numerous accusations that Defendant Larranaga fabricated medical records and withheld medical records from other medical staff.  (ECF No. 1 at 3-6.)  Plaintiff describes the attached letters as "fabricated reports by [the] program manager indicating a plan of care has been in place since 2014 as well as 2015 but it wasn't until 2017 that I wished to seek SRS surgery . . . let it be noted that in regards to a plan of care for

hormone treatment only my treatments have been addressed appropriately." (ECF No. 1 at 7-8.) Plaintiff omits any allegations of Defendant Larranaga fabricating or intentionally withholding medical records from the first or second amended complaint.

Given Plaintiff's originally filed complaint was filed on May 17, 2019, and the letters attached thereto from the period of February through April of 2019 describe a process underway with the Gender Dysphoria Committee recommending a series of mental/psychiatric assessments and extensive therapy focused on gender dysphoria to determine the suitability for SRS, a previous assignment of Dr. Webster as a transgender/transition specialist, and apparent visits with an outside hormone specialist, Plaintiff's complaint does not sufficiently describe what has occurred before or since the time Plaintiff filed the original complaint in a manner for the Court to be able to determine if Plaintiff has been improperly denied mental health treatment. Accordingly, Plaintiff's factual allegations do not establish a causal link to Defendant Larranaga for any constitutional violation.

3.     Defendant Brown

Plaintiff alleges Defendant Brown is liable in her individual capacity for her own inaction, that Brown makes policy for the mental health program, and is a superior to Defendant Larranaga. (SAC 13.)

Plaintiff's only specific allegations involving Brown's direct action/inaction, other than supervisory liability, is: (1) a meeting on an unspecified date with Plaintiff and Larranaga at which Plaintiff was told Plaintiff would have to see "their providers" that Plaintiff alleges are not trained in gender dysphoria (SAC 10); and (2) a conclusory statement that Brown acted recklessly over the course of four years having notice of endangerment to Plaintiff (SAC 13-14). These allegations do not establish a causal link to Defendant Brown for any constitutional violation.

As for supervisory liability, Plaintiff states Brown supervises Larranaga, and is liable "for not having a [competent] mental health program for trans inmates result[ing] in [Plaintiff] having severe mental anguish, d[u]ress, pain and suffering[,] and an attempted episode of [castration] acting pursuant to County policies that deprived [Plaintiff] of services afforded to het[e]rosexual inmates. (Id.) Plaintiff has not established Larranaga failed to provide mental health care in

violation of the Fourteenth Amendment, nor presented facts showing that Brown personally participated in such denial.   Further, Plaintiff has not pled facts identifying the specific unconstitutional policy promulgated and/or implemented by Defendant Brown and/or facts describing how the specific policy caused the violation of Plaintiff's constitutional rights. Therefore, Plaintiff has failed to state a cognizable supervisory liability claim against Defendant Brown.

        4.    <u>Defendant Kirk</u>

Plaintiff's sole allegation against Defendant Kirk is that in 2017, Plaintiff filed a grievance with Kirk for access to mental health treatments, that in August of 2017 Kirk granted the request stating he would work diligently with Larranaga and Brown to set a treatment plan for counseling treatment, but for years afterwards Kirk failed to set a treatment plan and the delay was deliberate indifference.  (SAC 15-16.)  Plaintiff alleges that in April of 2019, Plaintiff filed another grievance with Kirk but was told he has no authority over medical issues and the issues were addressed in the past.  (SAC 16.)

Such bare and conclusory allegations regarding the time period between 2017 and 2019 do not establish a causal link to Defendant Kirk for any constitutional violation.  Further, Defendant Kirk was named in the original complaint, but was not named as a Defendant in the first amended complaint.  (ECF Nos. 1, 10.)  Given Plaintiff's originally filed complaint was filed on May 17, 2019, and the letters attached thereto from April of 2019 describe a process with the Gender Dysphoria Committee recommending a series of mental/psychiatric assessments and extensive therapy focused on gender dysphoria, a previous assignment of Dr. Webster as a transgender/transition specialist, and apparent visits with an outside hormone specialist, Plaintiff's complaint does not sufficiently describe what has occurred since the time Plaintiff filed the original complaint in a manner for the Court to be able to determine if Defendant Kirk denied mental health treatment in violation of the Constitution.  Plaintiff also avers that Kirk is a superior to Larranaga and Brown, however, for the same reasons explained above in relation to Brown and Dirske, Plaintiff has also failed to establish supervisory liability for Defendant Kirk.

///

14

### 5. Defendant Duncan

Plaintiff's sole allegation against Defendant Duncan is that Duncan received the final administrative grievance on April 7, 2019, and Duncan denied the request stating the appeal was adequately addressed by Kirk and Larranaga, that Plaintiff has a complicated medical case, and that Wellpath was assessing an appropriate course of care. (SAC 17.)  For the same reasons applicable to Brown, Dirske, and Kirk, Plaintiff has failed to establish direct or supervisory liability for Defendant Duncan.

### 6. All Defendants

For the foregoing reasons, Plaintiff fails to state a cognizable claim for relief against any of the individually named Defendants in this action.

## C. Fourteenth Amendment – Inadequate Mental Health Care

"[M]edical care claims brought by pretrial detainees . . . 'arise under the Fourteenth Amendment's Due Process Clause, rather than under the Eighth Amendment's Cruel and Unusual Punishments Clause.' "  Gordon v. Cnty. of Orange, 888 F.3d 1118, 1124 (9th Cir. 2018) (citation omitted).  Therefore, "claims for violations of the right to adequate medical care 'brought by pretrial detainees against individual defendants under the Fourteenth Amendment' must be evaluated under an objective deliberate indifference standard."  Id. at 1124-25.  Accordingly, "the elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved – making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.  Id. at 1125.

"With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case

1    [and] [t]he mere lack of due care by a state official does not deprive an individual of life, liberty,

2    or property under the Fourteenth Amendment . . . [t]hus, the plaintiff must prove more than

3    negligence but less than subjective intent—something akin to reckless disregard."  Id. (citations

4    and internal punctuation omitted).  The Ninth Circuit has held that "the requirements for mental

5    health care are the same as those for physical health care needs."  Doty v. Cnty. of Lassen, 37 F.3d

6    540, 546 (9th Cir. 1994).

7        Here, Plaintiff alleges that their Fourteenth Amendment right to adequate mental health care

8    has been, and is continuing to be violated, because, even though they have made requests to see a

9    psychologist, psychiatrist, or other mental health professional who specializes, or who has

10   experience in treating, gender dysphoria, gender identity disorder and/or transsexuals, their requests

11   to see such a mental health professional have been denied for almost three years.  However, as

12   described above, Plaintiff has not sufficiently alleged facts demonstrating that any Defendant took

13   any action, or failed to take any action, with objective deliberate indifference to Plaintiff's need for

14   adequate mental health care for Plaintiff's gender dysphoria or gender identity disorder.  While

15   Plaintiff asserts that their requests to see a mental health professional who specializes, or who has

16   experience, in the treatment of gender dysphoria have resulted in no access to such treatment,

17   Plaintiff has not pled any facts demonstrating that any Defendant's actions or inactions caused

18   Plaintiff's requests to be denied or ignored.  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)

19   (stating that "[a] person 'subjects' another to the deprivation of a constitutional right, within the

20   meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or

21   omits to perform an act which he is legally required to do that causes the deprivation of which

22   complaint is made[]").

23       Further, Plaintiff has not alleged any facts establishing that any Defendants' actions or

24   inactions have caused Plaintiff to not have access to competent, adequate mental health care.  See

25   Moore v. Thomas, 653 F. Supp. 2d 984, 1000 (N.D. Cal. 2009) ("Deliberate indifference may be

26   shown where access to medical staff is meaningless as the staff is not competent and does not render

27   competent care.").  While Plaintiff asserts that they have not been seen by a mental health

28   professional specializing in treating gender dysphoria, Plaintiff has not pled any facts

16

demonstrating that, due to a Defendants' actions or inactions, they have either received no mental health care for their gender dysphoria or gender identity disorder, or that, while they have received some mental health care for gender dysphoria, the mental health professionals they have seen are not competent and have not rendered competent mental health care.  See Coleman v. Wilson, 912 F. Supp. 1282, 1305 (E.D. Cal. 1995) ("Under the Eighth Amendment the defendants are required to maintain a system in which inmates are able to make their need for mental health care known to staff competent to provide such care before inmates suffer unnecessary and wanton infliction of pain.")  The fact that Plaintiff had an incident of attempted self-castration does not automatically establish that any mental health care and treatment that Plaintiff received was incompetent.

Therefore, Plaintiff has not sufficiently alleged facts establishing that any Defendant made an intentional decision that caused the conditions under which Plaintiff was confined to put Plaintiff at substantial risk of suffering serious harm or that any Defendant failed to take any reasonable available measures to abate the substantial risk of serious harm to Plaintiff.  Accordingly, Plaintiff has failed to allege a cognizable claim for objective deliberate indifference to Plaintiff's serious mental health needs in violation of the Fourteenth Amendment against the named Defendants.

**D.     Fourteenth Amendment – Equal Protection**

The Equal Protection Clause requires that persons who are similarly situated be treated alike.  Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985).  An equal protection claim may be established by showing prison officials intentionally discriminated against a plaintiff based on his membership in a protected class, such as race, see, e.g., Thornton v. City of St. Helens, 425 F.3d 1158, 1167; Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or by showing that prison officials intentionally treated similarly situated individuals differently without a rational relationship to a legitimate state purpose, Engquist v. Or. Dep't of Agric., 553 U.S. 591, 601-02 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008).

///

///

///

17

In the section of the complaint pertaining to Defendant Dirske, Plaintiff alleges that:

> Currently the sheriff[']s facility has and has not had a policy affording transgender inmates the same rights afforded to het[e]rosexual inmates in regards to psychological mental health treatments for gender dysphoria making the mental health system defic[i]ent and unconstitutional, [and] implements or executes a policy statement, ordinance, regulation or dec[i]sion offic[i]ally.  Currently the[re] is no policy or regulation to treat trans inmates.

(SAC 7.)  Plaintiff's further alleges that Defendant Brown "makes and devises, policy for the mental health program" and alleges Brown is responsible for the "policy for not having a compe[t]ent mental health program for trans inmates result[ing] in [Plaintiff] having severe mental anguish[,] duress, pain and suffering[,] and an attempted episode of cast[]ration acting pursuant to County policies that deprived [Plaintiff] of services afforded to heterosexual inmates."  (SAC 13.)

However, Plaintiff has not pled any facts demonstrating that Defendants Dirske, Brown, nor any other Defendant intentionally discriminated against Plaintiff based on Plaintiff's membership in a protected class.  Even presuming that transgender individuals are a protected class, an unsettled issue of law,[6] Plaintiff has still not alleged any facts showing that any Defendant discriminated against Plaintiff by causing the mental health program to be defective in providing mental health treatment for transgender inmates like Plaintiff, in order to deprive transgender inmates like Plaintiff of adequate mental health care.  Further, Plaintiff has not pled any facts demonstrating that Defendants caused the mental health program to treat the mental health care needs of transgender

---

[6]  While the Supreme Court has not addressed the issue, the Ninth Circuit has recognized that discrimination based on transgender status is actionable under the Equal Protection Clause under an intermediate scrutiny standard.  Karnoski v. Trump, 926 F.3d 1180, 1202 (9th Cir. 2019) (transgender military members); see also Stroud v. Pruitt, No. 1:17-cv-01659-BAM (PC), 2019 WL 2077028, at *6 (E.D. Cal. May 10, 2019) (finding plaintiff sufficiently pled docking of pay with discriminatory intent based on status as transgender in violation of the Equal Protection Clause); Lesperance v. Manning, No. 216CV0764JAMACP, 2019 WL 4196330, at *5 (E.D. Cal. July 30, 2019) ("Plaintiff's allegations describe a search that was qualitatively different from prison searches of non-transgender inmates . . . these alleged differences in Manning's search of plaintiff support a potentially cognizable claim that Manning violated plaintiff's Fourteenth Amendment right to equal protection."), report and recommendation adopted, No. 216CV0764JAMACP, 2019 WL 4189488 (E.D. Cal. Sept. 4, 2019); Denegal v. Farrell, No. 115CV01251DADMJSPC, 2017 WL 2363699, at *2 (E.D. Cal. May 31, 2017) (prima facie showing of discrimination based on CDCR regulation authorizing vaginoplasty for cisgender, but not transgender, women created a quasi-suspect classification subject to intermediate scrutiny), report and recommendation adopted, No. 115CV01251DADMJSPC, 2017 WL 4237099 (E.D. Cal. Sept. 25, 2017); Norsworthy v. Beard, 87 F. Supp. 3d 1104, 1120-21 (N.D. Cal. 2015) (CDCR classification making it "more difficult" for a transgender female inmate to receive vaginoplasty than it is for a cisgender female inmate is discriminatory and subject to intermediate scrutiny under the Equal Protection Clause).

inmates differently than the mental health care needs of heterosexual inmates and other similarly situated jail inmates and that there was no rational basis for the difference in treatment.  Therefore, Plaintiff has failed to state a cognizable claim for a violation of the Fourteenth Amendment's Equal Protection Clause against Defendants.

### III.

### FAILURE  TO OBEY COURT ORDER AND FAILURE TO PROSECUTE

Here, the Court screened Plaintiff's second amended complaint, and on April 9, 2020, an order issued providing Plaintiff with the legal standards that applied to his claims, advising him of the deficiencies that needed to be corrected, and granting him leave to file an amended complaint within thirty days.  (ECF No. 18.)  Plaintiff did not file a third amended complaint or otherwise respond to the Court's April 9, 2020 order.  Therefore, on May 20, 2020, the Court ordered Plaintiff to show cause within fourteen (14) days why the action should not be dismissed.  (ECF No. 19.)  Plaintiff failed to respond to the May 20, 2020 order.

Local Rule 110 provides that "[f]ailure of counsel or of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions . . . within the inherent power of the Court."  The Court has the inherent power to control its docket and may, in the exercise of that power, impose sanctions where appropriate, including dismissal of the action.  Bautista v. Los Angeles County, 216 F.3d 837, 841 (9th Cir. 2000).

A court may dismiss an action based on a party's failure to prosecute an action, failure to obey a court order, or failure to comply with local rules.  See, e.g. Ghazali v. Moran, 46 F.3d 52, 53-54 (9th Cir. 1995) (dismissal for noncompliance with local rule); Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (dismissal for failure to comply with an order to file an amended complaint); Carey v. King, 856 F.2d 1439, 1440-41 (9th Cir. 1988) (dismissal for failure to comply with local rule requiring pro se plaintiffs to keep court apprised of address); Malone v. United States Postal Serv., 833 F.2d 128, 130 (9th Cir. 1987) (dismissal for failure to comply with court order); Henderson v. Duncan, 779 F.2d 1421, 1424 (9th Cir. 1986) (dismissal for lack of prosecution and failure to comply with local rules).

"In determining whether to dismiss an action for lack of prosecution, the district court is required to consider several factors: '(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.' " Carey, 856 F.2d at 1440 (quoting Henderson, 779 F.2d at 1423).  These factors guide a court in deciding what to do, and are not conditions that must be met in order for a court to take action.  In re Phenylpropanolamine (PPA) Products Liability Litigation, 460 F.3d 1217, 1226 (9th Cir. 2006) (citation omitted).

In this instance, the public's interest in expeditious resolution of the litigation and the Court's need to manage its docket weigh in favor of dismissal.  In re Phenylpropanolamine (PPA) Products Liability Litigation, 460 F.3d at 1226.  Plaintiff was ordered to file an amended complaint and within thirty days of April 9, 2020 and has not done so.  Accordingly, the operative pleading is the March 20, 2020 second amended complaint which has been found not to state a cognizable claim.  Plaintiff's failure to comply with the order of the Court by filing an amended complaint hinders the Court's ability to move this action towards disposition.  This action can proceed no further without Plaintiff's compliance with the order and his failure to comply indicates that Plaintiff does not intend to diligently litigate this action.

Since it appears that Plaintiff does not intend to litigate this action diligently there arises a rebuttable presumption of prejudice to the defendants in this action.  In re Eisen, 31 F.3d 1447, 1452-53 (9th Cir. 1994).  The risk of prejudice to the defendants also weighs in favor of dismissal.

The public policy in favor of deciding cases on their merits is greatly outweighed by the factors in favor of dismissal.  It is Plaintiff's responsibility to move this action forward.  In order for this action to proceed, Plaintiff is required to file an amended complaint curing the deficiencies in the operative pleading.  Despite being ordered to do so, Plaintiff did not file an amended complaint or respond to the order to show cause and this action cannot simply remain idle on the Court's docket, unprosecuted.  In this instance, the fourth factor does not outweigh Plaintiff's failure to comply with the Court's orders.

///

1  Finally, a court's warning to a party that their failure to obey the court's order will result

2  in dismissal satisfies the "consideration of alternatives" requirement.  Ferdik, 963 F.2d at 1262;

3  Malone, 833 F.2d at 132-33; Henderson, 779 F.2d at 1424.  The Court's January 27, 2020 order

4  requiring Plaintiff to file an amended complaint expressly stated: "If Plaintiff fails to file an

5  amended complaint in compliance with this order, the Court will recommend to a district judge

6  that this action be dismissed consistent with the reasons stated in this order."  (ECF No. 16.)  In

7  addition, the Court's March 9, 2020, order to show cause specifically stated: "Plaintiff is warned

8  that failure to comply with this order will result in a recommendation to a district judge that the

9  instant action be dismissed for failure to prosecute, failure to obey a court order, and failure to

10  state a cognizable claim for relief."  (ECF No. 19.)  Thus, Plaintiff had adequate warning that

11  dismissal would result from his noncompliance with the Court's order.

## IV.

### CONCLUSION AND RECOMMENDATION

14  The Court has screened Plaintiff's complaint and found that it fails to state a cognizable

15  claim.  Plaintiff has failed to comply with the Court's order to file a second amended complaint or

16  respond to the Court's order to show why the action should not be dismissed.  In considering the

17  factors to determine if this action should be dismissed, the Court finds that this action should be

18  dismissed for Plaintiff's failure to state a cognizable claim, failure to obey the April 9, 2020 and

19  May 20, 2020 orders, and failure to prosecute this action.

20  Accordingly, IT IS HEREBY RECOMMENDED that this action be DISMISSED for

21  Plaintiff's failure to state a claim, failure to comply with a court order, and failure to prosecute.

22  This Findings and Recommendation is submitted to the district judge assigned to this action,

23  pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen **(14) days**

24  of service of this Recommendation, Plaintiff may file written objections to this findings and

25  recommendation with the Court.  Such a document should be captioned "Objections to Magistrate

26  Judge's Findings and Recommendation."  The district judge will review the magistrate judge's

27  Findings and Recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that

28  failure to file objections within the specified time may result in the waiver of rights on appeal.

21

Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **June 16, 2020**

UNITED STATES MAGISTRATE JUDGE